STEPHENS, APPELLEE, v. HARMONY LOAN CORP., APPELLANT.

(No. C-73118—Decided September 17, 1973.)

Mr. *Andrew B. Dennison,* for appellee.
Mr. *Lee B. Kasson, Jr.,* for appellant.

SHANNON, J. This is an appeal from a judgment of the Court of Common Pleas of Hamilton County and was heard upon the transcript of the docket and journal entries, the original papers and pleadings from the court of common pleas, the transcript of the proceedings, the assignments of error, and the briefs and arguments of counsel.

On October 2, 1970, plaintiff Homer Stephens, Jr., the appellee, filed suit against defendant Harmony Loan Corporation, the appellant, seeking recovery of compensatory and punitive damages. Stephens alleged that Harmony had instituted actions in aid of execution upon a judgment, maliciously and without probable cause, knowing that Stephens was not obligated on any indebtedness; that, as a result, $81 was taken wrongfully from his wages; that Har-

mony had tortiously interfered with Stephens' employment and had harassed him and invaded his privacy.

On January 2, 1973, trial was had without the intervention of a jury and Stephens recovered a judgment for actual damages of $617, punitive damages, by virture of the malicious conduct of Harmony, of $617 and attorney's fees of $350.

Harmony has assigned four errors:

1. The lower court abused its discretion in denying defendant-appellant a continuance in view of the fact that the case was not even scheduled for trial at the time of the hearing and defendant had no opportunity even to have its proper records present, issue subpoenas for witnesses or even have material which it had previously prepared in court.

2. Defendant has been deprived of due process of law by the action in the lower court.

3. The ruling of the lower court is contrary to law even upon the very small amount of evidence which both sides did have an opportunity to present.

4. The judgment of the lower court is against the weight of the evidence.

The first two assignments raise, essentially, the same question and we have considered them as one.

The disposition of those assignments is begun best by quoting from the transcript of the proceedings.

"The Court: All right. Gentlemen, are we ready to proceed on Homer Stephens, Jr. versus Harmony Loan?

"Mr. Kasson: If Your Honor please, I would like to ask for the record to show that I did ask for a continuance today because I was unaware whether I would be able to prepare a defense today. And I would like to ask for a continuance on the point of view that I was not prepared to go to trial today."

"The Court: Let the record show this case was filed on October 2, 1970; that it went to judgment once; and judgment was set aside because defendant was not notified of the default hearing. The matter has been on the Court's docket several times. The Court had written counsel numer-

ous times inquiring as to the status of the case but received no reply from counsel for Defendant to the Court's letters of November 23, 1971; December 13, 1971; and June 19, 1972. No appearance was made by the defendant at a pretrial set September 13, 1972. And, this matter was set on the Court's docket sometime ago, as counsel for Defendant well knew, and his client is available and will be present.''

The record discloses that the default judgment was set aside on December 11, 1972, the entry also providing that "the case is set for hearing on plaintiff's application for judgment at 3 P. M. on Tuesday, January 2, 1973 in Room 334 Hamilton County Courthouse.''

Consequently, defendant must be held to have been forewarned that the court contemplated that the plaintiff would proceed on January 2, 1973, upon the default of defendant to answer, the circumstances being the same as they were when the default judgment was taken, save that defendant had been notified according to rule.

We also note that in the transcript of the proceedings reference is made by both counsel and the court to an "answer,'' but the record does not show that any answer or other pleading responsive to the complaint was filed. It is clear that the case was heard, then, upon the allegations of the complaint although the defendant was permitted to cross-examine witnesses and to call witnesses in its own behalf.

Whatever were the consequences of the proceeding, they were invited by the defendant. Viewed analytically, the record demonstrates that defendant had more than adequate opportunity to meet the issues but, for reasons of its own, chose not to do so. Therefore, we hold that the court did not abuse its discretion in refusing to acquiesce in further delay, that it did not deny defendant any substantial right accruing to it and that there was no denial of due process of law. The first and second assignments of error, then, are without merit because no litigant can engage in the conduct alluded to in the remarks of the court quoted above, which obviously forestalled the day of reckoning,

and then complain when a court turns a deaf ear to entreaties for more delay.

The third assignment of error, considered in juxtaposition with the fourth, raises what we consider to be the central issue: was the defendant-appellant's conduct malicious and without probable cause and such as to constitute an actionable invasion of the plaintiff's right of privacy?

We believe that the law applicable to the case at bar is stated in *Housh* v. *Peth,* 165 Ohio St. 35, the first three paragraphs of the syllabus of which are:

"1. The right of privacy is the right of a person to be let alone, to be free from unwarranted publicity, and to live without unwarranted interference by the public in matters with which the public is not necessarily concerned.

"2. An actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities.

"3. A creditor has a right to take reasonable action to pursue his debtor and persuade payment."

The issue as we have stated it broadly was narrowed considerably in its aspect to the court below by what transpired at the hearing.

In his opening statement, counsel for the plaintiff referred to particulars "admitted" by defendant which, inter alia, were: the institution of the action against one Larry Stephens, the taking of default judgment on January 24, 1969, the institution of a proceeding in aid of execution on February 13, 1969, the return of service therein upon Larry Stephens as "not found," and the fact that although the alleged employer of Larry Stephens first notified the clerk of the court that it was holding money pending court order, it subsequently notified the court that its employee was not "the proper party defendant to the action and was releasing the money." Further, counsel stated to the court that thereafter Harmony filed notices of garnishment on

April 28, 1969 (but released the same on May 15, 1969), on June 24, 1969 (which resulted in the payment by the employer pursuant to the order of court of $81 of plaintiff's wages to Harmony), on August 1, 1969 (released by the court on August 14, 1969), and on September 2, 1969 (released by the court on October 2, 1969).

Before the court below entertained evidence on behalf of the plaintiff, it addressed itself to counsel for Harmony in this fashion:

"The Court: Before you start, I gather, Mr. Kasson, that what Mr. Dennison recited about the admissions is correct, is that right?

"Mr. Kasson: It is certainly correct. I am not denying any of the proceedings in Municipal Court.

"The Court: You deny it was malicious and without probable cause?

"Mr. Kasson: I also deny that it was done in an effort to obtain money from this plaintiff. I don't deny any of the proceedings shown, but I do deny that it was done maliciously or without probable cause, as well as I noted in my Answer if any money was taken by Gibson Greeting, it was done on their own hook knowing it was the wrong person, and if they did so that would be on their own responsibility and not on the responsibility of this particular defendant. Of course, that is my contention."

As we see it, the issue then was whether what Harmony admittedly had done, coupled with testimony tending to prove other acts, constituted unreasonable conduct by Harmony in pursuing a debtor and persuading payment.

The transcript includes testimony to the effect that Stephens was present in court before a judge who compared his signature with that on the note to Harmony and stated to counsel then representing Harmony that "it didn't look like it to him." Thereafter, that attorney sent Stephens to Harmony's office after stating to its representatives there that "they had the wrong man" and one of the representatives said, after comparison of signatures, "it don't look like it."

It is uncontroverted that Stephens' employer threat-

ened him with discharge because of the garnishments, that he was compelled to seek legal counsel and to become indebted therefor, and that he lost wages because he was compelled to attend court hearings. Upon the evidence, the trial court, justifiably, found that Stephens was not the judgment debtor.

We conclude that while a creditor has a right to take reasonable action to pursue his debtor and persuade payment, such action is not reasonable and constitutes an invasion of the right of privacy, malicious and without probable cause, where a creditor or his representative institutes, on four occasions, proceedings in aid of execution in the form of garnishments of wages after it knows or should know that the wage earner is not, in fact, the judgment debtor, receives and retains an erroneous payment of wages paid into court by an employer, compels the wage earner to attend court for hearings upon the proceedings in aid, to retain counsel, to lose wages because of such enforced attendance, and to suffer the humiliation and embarrassment of threatened discharge.

Considered in its totality, the evidence before the court warranted the judgment made both in law and fact. Therefore, the third and fourth assignments of error are not well taken.

The judgment of the Court of Common Pleas of Hamilton County is affirmed.

*Judgment affirmed.*

Hess, P. J., and Palmer, J., concur.